NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RLI INSURANCE COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 07-5006 (JAP) |
| | : | |
| VINTAGE CONTRACTING CO., INC., et al., | : | |
| | : | **OPINION** |
| Defendants. | : | |

PISANO, District Judge.

This matter is presently before the Court on a motion to enforce the settlement agreement and for entry of judgment by plaintiff RLI Insurance Company ("Plaintiff") against defendants Vintage Contracting Co., Inc. ("Vintage"), Anthony Garofalo ("Mr. Garofalo") and Dawn Garofalo ("Mrs. Garofalo" and, together with Mr. Garofalo, the "Garofalos") [docket entry no. 23] and Mr. Garofalo's motion to set aside the settlement agreement [docket entry no. 32], and upon the Report and Recommendation of United States Magistrate Judge Douglas E. Arpert as to these motions (the "Report"). Having received objections to the Report and Recommendation, the Court has conducted a *de novo* review of the issues raised.[1] *N.L.R.B. v. Frazier*, 966 F.2d 812, 816 (3d Cir. 1992). For the reasons discussed below, the Court shall adopt the Report, and

---

[1] Review of a magistrate judge's report and recommendation is governed by Local Civil Rule 72.1. The Rule provides that the Court "shall make a de novo determination of those portions of the report and recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." L. Civ. R. 72.1(c) (2).

shall grant Plaintiff's motion to enforce the settlement agreement and for entry of judgment and deny Mr. Garofalo's motion to set aside the settlement agreement.

**I.      Background**

The claims in this matter arise from Plaintiff's issuance of payment, performance and other surety bonds on behalf of Vintage (the "Surety Bonds"), guaranteeing Vintage's performance under a construction contract with the Borough of Oakland, New Jersey (the "Borough").  In connection with the issuance of the Surety Bonds, the Garofalos executed an Agreement of Indemnity on May 23, 2001, and an Agreement of Indemnity on September 7, 2001 (together, the "Indemnity Agreements"), which obligated the Garofalos to indemnify Plaintiff for losses incurred as a result of an exercise of the Surety Bonds.

In December 2005, after the construction contract between Vintage and the Borough was terminated based on a disagreement between the parties thereto, Vintage filed suit against the Borough, which then commenced a third party action against Plaintiff demanding payment pursuant to the Surety Bonds.  In August of 2007, Plaintiff and the Borough settled the third party action for $100,000 and Plaintiff commenced this action to recover its losses under the Indemnity Agreements, which totaled $333,773.44.  The Garofalos and Vintage reached a settlement agreement with Plaintiff on January 16, 2009, which was approved by the Court on February 3, 2009 (the "Settlement Agreement").

The Settlement Agreement outlines an installment payment schedule by which the Garofalos would pay a total of $280,000 to Plaintiff beginning with five initial monthly payments of $20,000.  After the initial payments, the Settlement Agreement called for payments in the amount of $7,500 per month until resolution of the litigation between the Borough and Vintage (the "Oakland Litigation").  Finally, the Settlement Agreement provided that if the

Garofalos failed to make any of the required payments, Plaintiff would be entitled to judgment in the full amount of its loss ($333,773.44) with pre-judgment interest thereon at the statutory rate, but receiving credit for any payments already made.

The Garofalos defaulted under the Settlement Agreement on October 28, 2009 for failure to make a scheduled installment payment due on that date and Plaintiff filed the instant motion to enforce the Settlement Agreement and for entry of judgment against the Garofalos. In response, Mr. Garofalo moved to set aside the Settlement Agreement.

The motion and cross-motion were referred by the undersigned to United States Magistrate Judge Douglas E. Arpert, who issued the Report recommending that the motion to enforce the settlement agreement and for the entry of judgment be granted and the cross-motion to set aside the settlement agreement be denied. Magistrate Judge Arpert found that the parties reached an enforceable settlement agreement and that Mr. Garofalo's payments and emails were "demonstrative of his understanding of and intent to be bound by the terms of the Settlement Agreement." Report at 5. Magistrate Judge Arpert determined that there were no grounds to rescind or otherwise set aside the Settlement Agreement and, therefore, he recommended that Plaintiff's motion to enforce the Settlement Agreement be granted and Mr. Garofalo's cross-motion to set aside the Settlement Agreement be denied. Consequently, Magistrate Judge Arpert recommended that the Court enter judgment in favor of Plaintiff in the principal amount of $333,773.44, together with interest thereon at the statutory rate from August 30, 2007, less an amount equal to the sum of the payment made by the Garofalos under the Settlement Agreement. Mr. Garofalo filed an objection to the Report and Plaintiff responded to his objection. Having reviewed the issues raised in the objections *de novo*, the Court agrees with the conclusions reached by Judge Arpert.

## II.     Legal Discussion

Mr. Garofalo objects to that part of the Report in which Magistrate Judge Arpert found that there are no grounds to set aside the Settlement Agreement based on Mr. Garofalo's former counsel's representation.  Specifically, Mr. Garofalo urges this Court to further examine his allegation that Mr. Garofalo's former counsel exceeded his authority in negotiating the Settlement Agreement and that such counsel misrepresented the facts and circumstances of issues relevant to Mr. Garofalo's decision to enter into the Settlement Agreement.  This Court finds that Mr. Garofalo's allegations with respect to his former counsel's representation during settlement negotiations do not support setting aside the Settlement Agreement.

A settlement agreement between two parties to a lawsuit is a form of contract.  *Mortellite v. Novartis Crop Protection, Inc.*, 460 F.3d 483, 492 (3d Cir. 2006).  Courts are to look to state contract law to resolve disputes over such an agreement.  *See id.*  New Jersey supports a strong public policy favoring the enforcement of settlements that resolve disputes.  *Pascarella v. Bruck*, 190 N.J. Super 118, 124, 462 A.2d 186, 189-190 (App. Div. 1983).  However, where there is proof of compelling circumstances, a court may set aside a settlement agreement.  *Brundage v. Estate of Carambio*, 195 N.J. 575, 601, 951 A.2d 947, 961-962 (2008); *Nolan ex rel. Nolan v. Lee Ho,* 120 N.J. 465, 472, 577 A.2d 143, 146 (1990).  A party seeking to set aside a settlement agreement has the burden of proving incapacity or incompetence to form a valid contract or other extraordinary circumstance.  *Jennings v. Reed*, 381 N.J. Super 217, 227, 885 A.2d 482, 488 (App. Div. 2005).  Courts are also willing to set aside settlement agreements given a showing of unconscionability, fraud or coercion by one of the parties.  *See Harrington v. Harrington*, 281 N.J. Super. 39, 46, 656 A.2d 456, 459-460 (App. Div. 1995)(citations omitted).  Mr. Garofalo does not allege incapacity or incompetence to form a valid settlement agreement. Instead, Mr.

Garofalo claims that he entered into the Settlement Agreement based on his assumption that the Oakland Litigation would reach a conclusion prior to his completion of the $100,000 of settlement payments and that, had he known that delay of the trial was possible, he would not have entered the Settlement Agreement. He claims that his former counsel knew that delay of the Oakland Litigation was possible and that such counsel did not disclose this possibility to him. Unfortunately for Mr. Garofalo, these circumstances are not sufficient for this Court to set aside the Settlement Agreement. In fact, various emails between Mr. Garofalo and his former counsel evidence his understanding of the terms of the Settlement Agreement and his intent to be bound by such terms. As the record makes clear, Mr. Garofalo provided comments to drafts of the Settlement Agreement and asked for clarification on the meaning of various provisions. Mr. Garofalo's compliance with the terms of the Settlement Agreement through October of 2009 provides further evidence that he had full knowledge of the terms thereof. "[S]ettlements are favored and will be enforced whenever voluntarily agreed to by the parties." *Cap City Products Co, Inc. v. Louriero*, 332 N.J. Super. 499, 508, 753 A.2d 1205, 1210 (App. Div. 2000). There is no dispute that Mr. Garofalo voluntarily entered into the Settlement Agreement. The fact that the Oakland Litigation proceeded at a slower pace than anticipated by either Mr. Garofalo or his former counsel does not relieve Mr. Garofalo of his obligations under the Settlement Agreement.

Mr. Garofalo also argues that the Settlement Agreement should be set aside because Mrs. Garofalo was unaware of the terms and conditions of the Settlement Agreement when she entered into it and former counsel's conduct left her, essentially, unrepresented in the matter. Mr. Garofalo claims that this is a compelling factor in evaluating his motion. However, Mr. Garofalo does not cite, nor can this Court find, any legal authority to support the Court setting aside a Settlement Agreement based on one party's argument that another party to the litigation

was unrepresented by counsel.  Although not unsympathetic to Mrs. Garofalo's plight, the Court finds that she is also bound to the terms of the Settlement Agreement.

Finally, Mr. Garofalo objects to the Report, claiming that it did not provide any analysis based on his Rule 60(b)(6) claim.  Mr. Garofalo argues that his former counsel engaged in a course of conduct during settlement discussions that may have violated Rule 1.1, Rule 1.2, Rule 1.4 and Rule 8.4 of the New Jersey Rules of Professional Conduct.  As a result of such conduct, Mr. Garofalo argues that he was essentially left unrepresented and, therefore, is entitled to relief from the Court's February 3, 2009 Order approving the Settlement Agreement.  This Court finds that Mr. Garofalo's allegations with respect to his former counsel's representation do not support such a finding under Rule 60(b)(6).

Federal Rule of Civil Procedure 60(b) allows a party to seek relief from a final judgment, order or proceeding for a variety of circumstances including, but not limited to, mistake, excusable neglect, newly discovered evidence and fraud.   Mr. Garofalo moves under Rule 60(b)(6), which permits a district court to set aside a final judgment for "any other reason that justifies relief." Fed. R. Civ. Pro. 60(b)(6).  "Rule 60(b)(6) is available only in cases evidencing extraordinary circumstances." *Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir. 1975)(citing *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950)).  In addition, a Rule 60(b)(6) motion "must be fully substantiated by adequate proof and its exceptional character must be clearly established to the satisfaction of the district court before it can be granted by the court." *FDIC v. Alker*, 234 F.2d 113, 116 -117 (3d Cir. 1956).  Mr. Garofalo seeks relief under Rule 60(b)(6) from this Court's Order approving the Settlement Agreement for what he terms "gross neglect" of counsel. Mr. Garofalo relies on Boughner v. Secretary of Health, Education and Welfare, 572 F.2d 976 (3d Cir. 1978), for the proposition that attorney

conduct can constitute neglect so gross that Rule 60(b)(6) can provide relief. In that case, appellants' counsel had let several summary judgment motions, and a total of 52 motions overall, go unopposed. The court found that such conduct was "sufficiently exceptional and extraordinary so as to mandate relief pursuant to Rule 60(b)(6)." *Boughner*, at 978. Here, Mr. Garofalo has not alleged sufficient facts that support a finding of exceptional and extraordinary circumstances warranting relief. Rather, the record indicates that Mr. Garofalo's former attorney dedicated significant time and effort to negotiating terms of the Settlement Agreement on his behalf. Mr. Garofalo's claim that his former counsel failed to inform him of the possibility that the Oakland Litigation might proceed at a slower pace than anticipated does not rise to the level of gross neglect required for this court to set aside the Settlement Agreement under Rule 60(b)(6) or otherwise.

III. Conclusion

For the reasons above, the Court shall adopt those parts of the Report and Recommendation not inconsistent with this Opinion, and grants Plaintiff's motion to enforce the settlement agreement and for entry of judgment [docket entry no. 23] and denies Defendant's cross-motion to set aside the settlement agreement [docket entry no. 32].


/s/ JOEL A. PISANO
United States District Judge

Dated: October 15, 2010